Let's call our next case, 18-4151, United States v. Uintah Valley Shoshone Tribe. Mr. Rock for the appellant. Thank you, and may it please the court, Michael Rock on behalf of Appellant, Uintah Valley Shoshone Tribe. This case is being appealed from the District of Utah. The Uintah Valley Shoshone Tribe is an Indian tribe on the Uintah Indian Reservation, and the United States had filed a suit for permanent injunction to enjoin the tribe from selling hunting and fishing licenses. Is it a recognized tribe? It is not, Your Honor. Isn't that significant? It is to an extent, and at the same time, it's not a lot of the rights. There's an argument as to what rights were inheritable under the U-Termination and Partition Act of 1954. What's their legal status, then, if they're not a federally recognized tribe? What are they? So, Your Honor, in 1954, the U-Partition and Termination Act, or Termination Act, as I'm going to call it for simplicity, split the tribe into two distinct portions, the full-bloods and the mixed-bloods. The Uintah Valley Shoshone Tribe are the mixed-bloods. I understand that, but my question is, are they a non-profit corporation? They're a non-affiliated entity. My understanding is they're not incorporated. But they have a distinct tribe. There are approximately 2,000 members. They maintain roles. They have tribal officers. And these 2,000 are either members of the mixed-bloods or the descendants thereof. And they have maintained that tribal identity from at least 1956 to the affiliated Ute citizens. So our argument is, no, they're not a federally recognized tribe. However, that does not impact their tribal identity. They've maintained that. It does not impact their ability to continue to gain the benefit of the executive orders of 1861 and 1882 creating the reservation. So the rights asserted are not only asserted on behalf of the individual defendants, but also this Uintah Valley Shoshone Tribe, which is not a corporation, not a recognized tribe. Should it even be the defendant? Well, Your Honor, they are certainly a collective. They have officers. They have a board of directors. They were the entity or the unaffiliated, unincorporated entity that was issuing the hunting and fishing licenses at issue. So the individuals signed the authorization on these licenses or the licenses on behalf of Uintah Valley? Yes, that's correct, Your Honor. Is there a stamp that says Uintah Valley? They do have a seal, yes. And that's what's on the licenses? That's correct. I thought the record reflected that they did hold themselves out to the public and people interested in hunting and fishing licenses that they were a federally recognized tribe. Is that an accurate reading of the record? I think to some extent it is accurate that they were holding themselves out to be a federally recognized tribe. Why'd they do that if they're not? Your Honor, there's a fair amount of, I think, dispute amongst the members as to who the real members of the Ute tribe are. Are they members of the Ute tribe? They were members of the Ute tribe until 1954. Okay, they're not now, though. Correct. Regardless, though, Your Honor, there were no hunting and fishing licenses that were ever sold to members of the public, only to those on the rolls of the Uintah Valley Shoshone tribe. Does the Ute tribe issue hunting and fishing licenses? Yes, they do, Your Honor. What do they charge for them? What did your clients charge for them? I don't know what the Ute tribe charges, but ours were approximately $25 and $35, depending on the type of license for the game. So they were essentially to cover administrative expenses only. Was this submitted on stipulated facts? Yes, it was. No testimony taken? No. No depositions taken? No, there were none. So they are conceding, then, that they are not a recognized tribe? Well, Your Honor, I think that they are not a federally recognized tribe. That's correct. But I think that the case law is clear, regardless of federal recognition. That only allows you access to those special relationships between the tribe and the United States government, the access to certain rights with the Department of Interior Bureau of Indian Affairs. Did the Ute tribe participate at all in this program? They did not. I'm sorry? In the litigation? Yeah, was the Ute tribe involved in the licensing program? They were not involved in the licensing program of the Uintah Valley Shoshone tribe, no. They weren't a part of this litigation? No, they were not. Well, in my review of some of the historical background, it looked like the Ute Partition and Termination Act required the Ute tribe to be involved in managing these hunting and fishing properties. But it sounds like they're excluded from the program that were at issue here. How do you get around that act? That's part of the problem, Your Honor, is there is this divisive nature between the Ute tribe and the Uintah Valley Shoshone tribe. The 1954 Partition Act, as well as the court order from the District of Utah, both state that those hunting and fishing licenses and rights are to be jointly managed by the Ute Tribal Business Committee and a representative of the Affiliated Ute Citizens, which is now the Uintah Valley Shoshone tribe. Unfortunately, that has not happened. What do you mean that hasn't happened? There hasn't been a representative from the Uintah Valley Shoshone tribe participate? Yes, my understanding is there has not been a representative from the Uintah Valley Shoshone tribe participating alongside the Ute Tribal Business Committee in the issuance of hunting and fishing licenses. Mr. Rock, if you can, in just a nugget, tell me precisely what is the source of the rights that the Shoshone tribe relies upon for the issuance of these licenses?  The 1861 Executive Order forming the Uintah Valley Reservation, as well as the 1882 Executive Order forming what was then the Unencumbra Reservation, which were then subsequently combined to form the Uintah and Ore Reservation, provided the right to use the lands, I think, believe the language is as Indians use them. And what we know is that includes hunting and fishing. If we look at the case like this, the nominee tribe versus the United States, they specifically hold that those rights are retained by the tribe after termination by Congress, unless Congress specifically abrogates those rights. And if you look at the Ute Termination and Partition Act, there is no explicit abrogation of rights to hunt and fish by the mixed bloods. If they're not abrogated as to mixed blood members, I still don't know what legal entity has inherited the rights on this land. So the Ute tribe, as a tribal business committee in which they operate the land, the Uintah Valley Shoshone tribe. Your client takes the position that they are wholly separable from the Ute tribe. That's correct. Full autonomy to manage hunting and fishing rights on these tribal lands, correct? That's correct, Your Honor. And if you dig deep into the history on this, the Uintah Valley Shoshone tribe dates their lineage in the Utah area back to hundreds of years ago. They were the original occupants of the Uintah Valley Indian Reservation. The Ute Indians that are now the federally recognized Ute tribe are a group of Ute Indians that were given land in Utah in the 1880s. The Uintah Valley Shoshone tribe dates their use and occupancy of the land back to a time before the Spanish came, as well as their rights under the 1861 executive order creating the Uintah Valley Reservation. Were any of your clients criminally prosecuted? No. Oh, go ahead. There were some state actions. I'm not sure what the tendency of those was, but I don't believe it involved any of the individuals named in this matter. Right, and I'm specifically curious as to whether they were prosecuted for wire fraud. They were not, no. And with respect to that, I think that our argument with respect to the permanent injunction related to the wire fraud charges brought by the United States is simply that the United States cannot meet all the elements of the requirements. There's no fraud. There was no malice. There was no intent to deceive. And if you don't, if you can't prove that, then simply you can't prove wire fraud. What about the representation that they're a federally recognized tribe with the authority to grant these licenses? Why isn't that an exception? I think, Your Honor, with respect to the federal recognition, I don't think that it was their position that they were on the list of federally recognized tribes that's published by the Bureau of Indian Affairs. I think they may have been using the term loosely, and they are no longer making any representation as to that. Since the suit was filed, have your clients attempted to sell any more fishing or hunting licenses? No, they have not, not since the suit was filed in, I believe, November of 2017. I thought that was just a stipulation made during oral argument in the district court, but that between the time of the filing of the suit and the oral argument, I thought there was some assertion of these rights. They continue to assert the rights. It's my understanding they didn't issue any further licenses. So as soon as this lawsuit was filed, the record will indicate that there was no issuance or attempt to issue licenses. That is my understanding. If I'm incorrect with that, I'd be happy to supplement, but that is my understanding correct. And as we asserted at oral argument, we're refraining from issuing any further hunting and fishing licenses until this litigation is concluded, and they have followed through with that. Unfortunately, to the detriment of its members who haven't been able to access their hunting rights, notably in the 2018 and 19. What happens if the members of this tribe go to the Ute tribe and try to get a license? It's the Ute tribe's position that only individuals who were on the rolls in 1954 have any right to hunt and fish, that those rights were not inheritable, and when those members pass away, their children have no right to hunt or fish on the property. Okay, and we have a case to that effect. Correct, and so that's the von Murdoch case. And, well, I understand that. I think that a reading of it is a rather generous interpretation of the Partition and Termination Act, in which in both the Felton case and von Murdoch, they look at the rights or the assets that are non-divisible, and they note oil and gas and mineral assets are non-divisible and can't be inherited. And to that, the court has also read, although not specifically in that act, hunting and fishing rights are also non-divisible assets, and therefore not inheritable by the children of the 490 that were unenrolled. And I think that goes against the nominee case, which says that you have treaty rights and the tribe is able to retain those, and unless there is a direct abrogation of those rights by Congress, that those rights are therefore retained. So I think that the statute doesn't take those rights away, and I think that a direct reading of it, of the statute, means that those rights have to be retained by the mixed bloods, regardless of the reading by this court. I think that that understanding was incorrect. Does the record indicate whether the individual defendants are descendants of the 490? I don't know if the record does. Dora Vann is a member of the 490. Ms. Harris, I've found recently, has just passed away, and I am uncertain as to Leo LeBaron. What about Ms. Harris? Was she part of the 490? I don't believe so, no. All right. Your time has expired. Mr. Rock, let's hear from Mr. Bennett. Thank you. We have pleased the court, Jared Bennett, on behalf of the United States. The district court correctly held that the defendants have absolutely no right to sell hunting and fishing permits for use on tribal land, and for that reason the court should have permanently enjoined those fraudulent    the court should have permanently enjoined those fraudulent activities. In order for the defendants to be right in this case, this court would have to reverse at least two decisions of the past. First of all, United States v. Felter in 1985, and second, United States v. von Murdoch in 1997. In both of those cases, this court held that when the Ute tribe was combined from its different branches to form what is now the Ute tribe, that Ute tribe became the exclusive tribal authority over the reservation. That included the ability to regulate hunting and fishing within its boundaries. What's the best authority for that assertion? So United States v. von Murdoch, I believe, has the best synopsis of the history there in showing that the Ute tribe was the tribe that has the authority to regulate hunting and fishing. In that case, there was a member of what would now be the Utah, the Uintah Shoshone tribe, who went on to land and shot an elk or a deer, I believe, on Ute tribal land. In that case, the person who was prosecuted for having done so asserted that his rights were time and memorial, like we're hearing here today, and this court found that to be untenable, simply because the Termination Act made these mixed bloods no longer part of the Ute tribe and forbade them from ever being a tribe. So rebranding themselves now as the Utah Valley Shoshone tribe doesn't cut it. For that reason, they're not federally recognized. They never can be. And to assert that they are federally recognized, we'll talk about in a second, is indicative of the fraud that we're talking about in this case. What are they? What is their corporate or organizational status? The Uintah Valley Shoshone tribe? I'm not sure, Your Honor. They certainly hold themselves out to be an organization. They hold a seal. They have a council. They have these licenses and applications for license. Do they have any federal status? None at all, no. In fact, the statute, the Termination Act, precluded them from ever seeking federal status again. So there is no question here that this is not a federally recognized tribe with any rights whatsoever under federal law. Therein lies the problem. Here we have this reservation that is by Congress the exclusive tribal authority, the Ute tribe. Now we have this other entity, which was terminated from the Ute tribe, is now asserting the ability to constitute a rival regime for regulating hunting and fishing permits. That's untenable. Congress, by recognizing the Ute tribe as the official tribe of the reservation, could not at the same time have contemplated that someday in the future this other entity would come along and set up a rival regime to regulate resources on the Ute tribe land. This is why the defendants cannot have what they want, because it's simply not possible as a matter of law. For that reason, the United States filed suit against the defendants under the theory of 1345, filing a civil injunction against wire fraud. To prove wire fraud, we must show two elements. Number one, that there was a scheme to defraud, and in this case by false pretenses. As this court recognized in the United States v. Cochran in 109 Federal III, page 668, the... Who was being defrauded? The people that were buying these permits, Your Honor. What about the Ute tribe? Why aren't they in this litigation? Well, the Ute tribe is also a victim of this fraud. They chose not to intervene because the United States, as the trustee, is able to step in in the shoes of the tribe and litigate on its behalf, which is what it did here. They've never asserted a tribal interest in the outcome of this case or the legal issues? I know their counsel is here today observing this. There certainly is a tribal interest. But they haven't submitted anything formally. That's correct. They have not intervened in this litigation, nor have they become amici for purposes of our litigation here today. Do the stipulated facts indicate what they were charging for these licenses? Yes. It was $25, I believe, for a hunting license, and then $5 for a fishing permit. And how many were sold? At least on the rolls that we have, which I think begin on page 720 of the record, I think there were 68 that were sold in 2016. The record is unclear as to how many were sold in 2017 because this lawsuit was filed thereafter. So part of what... Go ahead. Under the defendant's view, the descendants of the 490 did not need their license, correct? That's correct. So the 60-some that were sold are people wholly unrelated to the 490? So let me parse it out. Yes. Well, I don't know if they're wholly unrelated or not. I'm not aware of their genealogy. What I do know is that this court has twice held in Felter and then again in Von Murdoch that the 490 possess a personal right to hunt and fish. But that's only through the U-Tribe. They have to go to the U-Tribe to get permission to be able to exercise that right. The U-Tribe is supposed to, based on their status as being one of the 490, grant that permit to hunt and fish, not to set up a rival government. As to the folks that are now the progeny of those 490 that may or may not consist of these 2,000 members of the Uintah Valley Shoshone Tribe, I'm not quite sure where they decide they get their rights from because, as I said before, and as this court has said at least twice, those rights were personal to the 490 and died when they did. So there is no way that this progeny could have rights descended from the 490 because they died when those folks on that registry did as well. Do you have any appreciation for the... what may not be a fact, but appears to be so, and that is that they have a genuine good-faith belief that they have the right to issue these as a result of the 1861 Executive Order and the 1882 Executive Order? Yes, I'm aware that's what they're representing to the people. Why is that not so? Well, because there is a lot of history from this very court that would show otherwise. In addition to facts on this record which told them that was not the case. There was no good-faith basis. So there are numerous things, and I'll address them in kind. Number one, if we go back to 1985, this court said, this group does not have the right to issue hunting and fishing except for the Ute tribe. This defendant? Yeah, these group of people that belong to the affiliated Ute citizens now called the Uintah Valley Shoshone tribe. Were they then, when that was said, Uintah Valley Shoshone tribe? No, but they were the Ute-affiliated citizens, which has now been rebranded in the modern day as Uintah Valley Shoshone tribe. Looking at the record, they're the same entity. For example, I believe it's page 565 of the record, Dora Van, the head of the Uintah Valley Shoshone tribe, addresses a letter to the Ute Business Council in which she says that she's part of the Ute-affiliated citizens. And I think council's representation here today was that the Uintah Valley Shoshone tribe and Ute-affiliated citizens are one and the same. So we look at the 1985 case. We look at the 1997 case with Von Murdoch. In addition to that, we had law enforcement officers that approached the named members of this lawsuit. In addition to some of the people that were hunting and fishing with the Uintah Valley Shoshone permits and said, these aren't valid. I mean, isn't that the crux of the whole deal, though? Because the Uintah Valley Shoshone tribe members, their whole beef is that they shouldn't have to ask the Ute tribe if they can hunt, that they already have these rights. So when approached by Ute tribal law enforcement, I mean, does that really put them on notice that they don't have the right? Or just that it's more evidence of their ongoing disagreement with the Ute tribe about the rights? Your Honor, it is not the latter. It is the former, and it has to be. Because if it weren't the case, then every single tax protester that comes here and starts to sell to people a tax scheme that says you don't have to pay your taxes, even though it's well established that you do. And someone can say, well, I didn't know. Well, the proof that we would put on for that to show there wasn't a good faith belief is the fact that they were told so many different times by authorities that that isn't the case. And that has been held persuasive in terms of showing intent in numerous cases. You're talking about in criminal cases? Certainly. And this is a wire fraud case. We're simply using the civil standard preponderance of the evidence to show that. And there wasn't intent to defraud here. The law is clear that they do not have authority to sell these permits, hence the three misrepresentations that were on their licenses and permits. You need to help me make that jump that you made. Why is this not just a misled, albeit in good faith, assertion of a right that doesn't exist? Two reasons, Your Honor. First of all, we have to look at Cochran. Cochran is the case we talked about earlier and we cited in our briefs about what wire fraud is. To have wire fraud, we have to have intent to mislead. And I think that's what this question is going to. So in order to prove intent to mislead, on page 668 of that case, it says that if there is to be actual harm that flows from the fraud, we infer intent to mislead. What's the harm that has flowed from this? If these people have gone out with these licenses. Well, okay, you infer. That means you can infer, if you so choose, as a fact finder, correct? Certainly. And did the fact finder so infer in this case? We don't know. Judge Jenkins' decision as to whether there was a scheme to defraud is found on page 1077 of the record. Basically, that portion, the few sentences in which he addresses it, seems to suggest that he wasn't convinced that the United States had proven a fraud because we didn't meet the evidence of a criminal statute. Well, it may be a criminal statute, but this is a civil case. Wait a minute. So you're saying he applied a standard beyond a reasonable doubt? It's hard to say from the order, Your Honor, but it would appear that way from the reading that I have. Don't you – well, I read it that it could be a preponderance standard, that he didn't think you established the fraud, preponderance. Therein lies the problem because he doesn't mention the preponderance standard, but he simply says there wasn't enough proof under a criminal statute, which kind of leaves us wondering. But to put this to bed – Did you file any motions to clarify that? No, Your Honor. To put this to bed, though, the harm that these folks suffered as a result of purchasing these permits was that when they went out, they were then visited and at times criminally cited for using them. They obtained a false permit to be able to go out and hunt and fish where they couldn't. They were based on three material misrepresentations. Number one, that they were a federally recognized tribe. Regardless of what the defendants here would like to hope that means, that means something legally. And as an objective person looking at that saying, should I buy this permit, saying that you're a federally recognized tribe matters. And what compounded the problem was the fact that the tribe then – this tribe then said they were DBA of the Uintah Valley Utah – the Ute tribe of the Uintah Inouye Reservation. That's the exact name of the Ute tribe. So on the permits and on the licenses application that the Uintah Valley Shoshone tribe is selling, they're not only representing that they are a federally recognized tribe, they're saying they're doing business as the Ute tribe. In addition to that, they say that they are a federally recognized corporation. And if this Court wants to take a look at those applications and permits, it's found starting on page 720 of the record and goes to 724. And then there are actual permits sold on pages 760 and I think it goes to 780 of the record. But the point is, is that these are serious misrepresentations that would lead an objective person to acquire these permits based on those misrepresentations, then go out and use them and suffer the harm of being criminally cited for having used them. What standard do we apply to the decision of the district court not to issue a permanent injunction? That's an abuse of discretion standard, Your Honor. And so what we're trying to say is the Court erred and it abused its discretion by not finding a scheme for the evidence that is clear and stipulated and undisputed on the record. Where we also have this problem in terms of why it should have granted is that the elements 2, 3, and 4 to obtain a permanent injunction were waived. The defendants didn't brief them below and they did not brief them here. And when a party does not brief elements of a case, so specifically whether there was irreparable harm, whether the balance of the harm favored issuing an injunction, whether the public interest favored an injunction, that has not been briefed here or below. It's waived. Moreover, the second element to prove wire fraud, that use of the interstate wires was an incident to an essential part of the scheme, that hasn't been briefed either here or below. That is also waived. Is it your position that they had a pecuniary interest in issuing these licenses, that they were trying to make money? They were selling them for money, whether that turned into a profit based on their operation. Is that enough? If I'm trying to make a point and assert some rights by issuing licenses, if I sell them for a de minimis amount, is that enough? I believe it is. Simply because when you are selling something using material misrepresentations, regardless of whether you sell it for an exorbitant amount, which certainly isn't an element of proving wire fraud, that's enough. What if they said, come in and get your free hunting and fishing license from us, a federally recognized tribe? Then I think we would have a more difficult time in proving that element, which requires the obtaining of property through false pretenses. Here, there was money and property obtained. And ultimately, the U Tribe, in addition, was a victim of this in that they were losing the ability to control their resources. I understand you say they sold these for $25. I see my time has expired. May I respond, Your Honor? Yes, Your Honor. For the hunting permits and then $5 for the fishing permits. And there were $1,500 combined of the hunting and fishing? I'm sorry? Excuse me. There were 67. 67, I believe, that were total in 2016 that were sold. You don't know how it breaks down between hunting and fishing? I do not. So we're talking about $1,500 they charged total, right? At least for the records we have in the record, yes. Does the record indicate how much total money that they accumulated by selling these licenses? No, Your Honor. But the important thing to remember is that whether you made a lot of money isn't an element of wire fraud. It's whether things were sold and property was obtained based on material misrepresentations, which is what we have here. For those reasons, Your Honor. I'm sorry, do you have another one? Were any of the licensees criminally prosecuted? Not yet. Now, I think the state, well, at least by the federal government. By the state government, I'm not sure. By the tribe? The tribe can't prosecute them because they're not Indians. The tribe only has jurisdiction of Indians on Indian country, not non-Indians on the tribe. Utah tribe, the Utes could not prosecute them? No, Your Honor. For those reasons, the United States submits and respectfully requests that it affirm on the one ground, but then reverse an order at issuance of an injunction. Thank you. Counsel, we appreciate and understand your arguments. You are excused. A shall be submitted.